

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

RICHARD JAMES ASHTON,              §
                                   §
             Petitioner,           §
                                   §
v.                                 §        No. 4:12-CV-527-A
                                   §
RICK THALER, Director,             §
Texas Department of Criminal       §
Justice, Correctional              §
Institutions Division,             §
                                   §
             Respondent.           §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Richard James Ashton, a state prisoner currently incarcerated in Amarillo, Texas, against Rick Thaler, Director of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ), respondent.  After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

### I.  Procedural History

On September 7, 2005, a jury found petitioner guilty of aggravated sexual assault with a deadly weapon, a glass pipe, in the 213th District Court of Tarrant County, Texas, Case No.

0951433D, and, on September 8, 2005, found the repeat offender notice in the indictment true, and assessed his punishment at life imprisonment and a $5,000 fine. (State Habeas R., vol. 4, at 792[1]) Petitioner appealed his conviction, but the Second District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused his petition for discretionary review. (*Id.* at 794-804) Petitioner also sought postconviction state habeas corpus relief, to no avail. (*Id.*, vol. 1, at cover)

The state appellate court set forth the "Factual Background" of the case as follows:

> In October 2004, [petitioner] forced his way into her apartment when the victim answered the door. [Petitioner] assaulted the victim and pushed her into the bathroom where he forced her to perform oral sex on him. Throughout the assault, [petitioner] was highly agitated at the victim because he could not maintain an erection. [Petitioner] alternatively held sharp objects, later identified as a pencil and the jagged end of a broken glass pipe, against her throat. During the entire period, [petitioner] threatened the victim culminating with a threat to kill her. At the conclusion of the assault, [petitioner] simply got up, put his clothes on, and walked out of the victim's apartment. The victim called 911 and two police units were dispatched from a nearby parking lot. [Petitioner] was stopped leaving the apartment complex and was arrested at the scene. The victim was taken to

---

[1]"State Habeas R." refers to the state court record of petitioner's state habeas application no. WR-77,864-02.

the hospital where rape samples were taken. While [petitioner] was incarcerated, samples of hair, saliva and blood were taken from him pursuant to a search warrant. DNA testing on the evidence recovered from the victim and the victim's apartment proved positive for [petitioner]'s DNA. Additionally, DNA testing from blood on [petitioner]'s penis and hand tested positive for the victim's DNA. During the trial, [petitioner]'s trial strategy appeared to be that the sexual encounter was consensual and that there were no threats against the victim nor was she held against her will.

(State Habeas R., vol. 4, at 795)

Petitioner's defensive strategy at trial was that the sexual encounter was consensual.

## II.  Issues

Petitioner raises twenty-nine grounds for relief, in which he alleges ineffective assistance of counsel (grounds one through fourteen and nineteen through twenty-nine), prosecutorial misconduct (grounds fifteen and sixteen), and abuse of discretion by the trial court (ground seventeen) and the state appellate court (ground eighteen). (Pet. at 6-7k)

## III.  Rule 5 Statement

Respondent asserts two of petitioner's ineffective assistance claims are unexhausted and procedurally barred, but otherwise asserts the petition is neither time-barred nor successive. (Resp't Ans. at 5)

## IV.   Discussion

### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf
of a person in custody pursuant to the judgment of a state court
shall not be granted with respect to any claim that was
adjudicated on the merits in state court proceedings unless he
shows that the prior adjudication:   (1) resulted in a decision
that was contrary to, or involved an unreasonable application of,
clearly established federal law, or (2) resulted in a decision
that was based on an unreasonable determination of the facts in
light of the evidence presented in the state court.   28 U.S.C. §
2254(d).   A decision is contrary to clearly established federal
law if the state court arrives at a conclusion opposite to that
reached by the Supreme Court of the United States on a question
of law or if the state court decides a case differently than the
Supreme Court has on a set of materially indistinguishable facts.
*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v.
Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).   A state court
decision will be an unreasonable application of clearly
established federal law if it correctly identifies the applicable
rule but applies it unreasonably to the facts of the case.
*Williams*, 529 U.S. at 407-08.

4

The Act further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits. *Barrientes v. Johnson*, 221 F.3d 741, 779-80 (5th Cir. 2000); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

In this case, the state habeas court entered findings of fact, which were adopted by the Texas Court of Criminal Appeals. (State Habeas R., vol. 4, at 721-33) Petitioner has failed to rebut the state courts' factual findings by clear and convincing evidence; thus, this court defers to those findings in addressing petitioner's claims below.

### A. Ineffective Assistance of Counsel

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must

show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where the state courts have applied the *Strickland* attorney-performance standard to factual findings, a federal court will defer to the state courts' determination unless it appears the decision was: (1) contrary to or involved an unreasonable application of *Strickland*, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the state court proceedings. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002).

Petitioner was represented at trial by retained counsel Andrew Platt and Kenneth Cutrer. Petitioner claims counsel

rendered ineffective assistance by–

(1)   failing to investigate, interview or subpoena
Steven Smith, an alibi witness, as he requested;

(2)   failing to investigate, interview or subpoena Mr.
McWhorter, a neighbor of the victim, as he
requested;

(3)   failing to investigate, interview or subpoena Fred
Cummings, his former attorney, as he requested;

(4)   failing to interview David Marlow, the court-
appointed investigator;

(5)   failing to investigate, interview or subpoena
Deena Lavender, the EMT who took buccal swabs for
DNA comparison three days after the offense, as he
requested;

(6)   failing to investigate or interview state's
witness Debbie Zachery, a resident of the
apartment complex, for trial preparation;

(7)   failing to investigate and interview Detective
Beasley and his police report for trial
preparation;

(8)   failing to conduct an independent investigation on
alleged evidence and accusations by the
complainant and the state;

(9)   having him sign a stipulation of evidence and then
lying to the jury that the stipulation says there
was blood on his penis;

(10)  going off the record and failing to strike venire
person #27, who could not understand the
proceedings;

(11)  failing to object to the state's oral motion to
seal medical records without investigating the
contents of the records;

7

(12) failing to have "Discovery Motion request #4" heard to preserve his right to challenge the arrest warrant;

(13) failing to investigate and interview the state's witnesses for trial preparation in the punishment phase;

(14) failing to object to the state's "establishing false evidence at trial";

        . . .

(19) failing to show the jury evidence that the glass pipe was planted on him by Detective Beasley;

(20) failing to object to a falsified crime scene photo presented as evidence by the state;

(21) taking his case from counsel Lisa Mullen without his knowledge after Mullen was hired;

(22) taking his case when one of the state prosecutors was married to a member of the same law firm creating a conflict of interest;

(23) failing to investigate, interview or subpoena Natalie Nance, a resident of the apartment complex;

(24) failing to show the victim's bra was on the couch to discredit her testimony;

(25) failing to object to the state's expert witness testifying;

(26) refusing to give him a copy of his trial files to better perfect his habeas corpus applications; and

(27) inflaming the entire venire panel during voir dire by implying he had a prior felony;

Petitioner also claims that he was denied a fair and just

trial because of the cumulative effect of counsel's errors and that counsel incriminated themselves by committing 56 counts of perjury in their court-ordered habeas affidavits (grounds (28) and (29)).   (Pet. at 6-7k)

As a preliminary matter, the court addresses respondent's claim that petitioner's claims (27) and (28) are unexhausted and procedurally barred.   (Resp't Ans. at 30-32)   Applicants seeking habeas corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief.   28 U.S.C. § 2254(b)(1); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999).   The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state.   *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher*, 169 F.3d at 302; *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982).

In Texas, the highest state court for criminal matters is the Texas Court of Criminal Appeals.   *Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985).   Thus, a Texas prisoner may satisfy the exhaustion requirement by presenting both the factual and legal substance of a claim to the Texas Court of Criminal Appeals in either a petition for discretionary review or a state habeas corpus proceeding pursuant to article 11.07 of the Texas

Code of Criminal Procedure.   *See* TEX. CODE CRIM. PROC. ANN. art.
11.07 (West Supp. 2012); *Depuy v. Butler*, 837 F.2d 699, 702 (5th
Cir. 1988).

Having reviewed petitioner's state habeas applications, it
does not appear that claims (27) and (28) were raised.   They
certainly exceeded the scope of the claims presented in state
court.   Thus, claims (27) and (28) are unexhausted.   Under the
Texas abuse-of-the-writ doctrine, however, petitioner cannot now
return to state court for purposes of exhausting the claims.
TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4.   The abuse-of-the-writ
doctrine represents an adequate state procedural bar to federal
habeas review.   *See Nobles v. Johnson*, 127 F.3d 409, 423 (5th
Cir. 1997).   Therefore, absent a showing of cause and prejudice
or a miscarriage of justice, such showing not having been
demonstrated, petitioner's ineffective-assistance claims (27) and
(28), raised for the first time in this federal petition, are
procedurally barred from this court's review.[2]   *See Smith v.*

---

[2]Petitioner's pro se status and ignorance of the law do not
excuse his failure to exhaust state court remedies as to the two
claims.   (Pet'r Reply at 3)   *See Fisher v. Johnson*, 174 F.3d 710,
714 n.13 (5th Cir. 1999) (*citing Saahir v. Collins,* 956 F.2d 115,
118-19 (5th Cir. 1992)(providing that pro se status and ignorance
of the law does not constitute "cause" for failing to present a
legal claim in a petition previously filed)); *Hannah v. Conley,*
49 F.3d 1193, 1196-97 (6th Cir. 1995)(*citing* Ewing v. McMackin,

*Johnson*, 216 F.3d 521, 523-24 (5th Cir. 2000).

As to the remaining claims, the state habeas court conducted a hearing by affidavit. Lead counsel Andrew Platt responded to petitioner's allegations in his original and supplemental state habeas applications as follows:

> a.   Counsel failed to investigate, interview or subpoena Steve Smith
>
> I spoke with Steve Smith on the phone the week before the trial began. I did not see how his testimony would be relevant for our defense of consent. I did not investigate or subpoena him because he told me he would come to the trial voluntarily. He viewed most of the trial and was available in Fort Worth as a witness if I needed to use him. I did not call Steve Smith as a witness in the guilt phase of the trial because all he could dispute was when Richard Ashton would have arrived at the victim's apartment. That was a point I didn't choose to dispute because our defense was consent to sex. Therefore, the only place his testimony could have been relevant was in the punishment phase; however Mr. Ashton requested I not call him to testify in the punishment phase.
>
> b.   Counsel failed to investigate, interview or subpoena Mr. McWhorter
>
> I spoke with Mr. McWhorter on the phone two weeks before the trial began. I did not see how his testimony would be relevant for our defense of consent. I did not investigate or subpoena him because I was not going to use him as a witness. I told him I was trying to help Richard Ashton and was considering using him as

_____

799 F.2d 1143, 1151 (6th Cir. 1986) (determining that status as a pro se litigant does not excuse the failure to raise issues in state court)).

a possible punishment witness but he told me that if I were trying to help Ashton, "you don't want to call me [McWhorter] as a witness."  He said he did not know if he was in his apartment when the offense took place or if he would have been able to hear a scream if he had been.  In preparing my answers for this writ, I saw where I had written his number on David Marlowe's investigative notes.

c.    Counsel failed to investigate, interview or subpoena Fred Cummings

I spoke with Fred Cummings about Ashton's case but my feeling was he didn't have much to offer in the way of a defense.  The interview was not extensive and he did not offer much.  I did not subpoena him or investigate him.

d.    Counsel failed to investigate, interview or subpoena David Marlowe

I did not investigate, interview or subpoena David Marlowe, but I had his notes and I had them in plenty of time to use them to prepare for trial.  I do not recall where I got the notes but I believe it was from Mr. Ashton's previous lawyer, Bill Ray.  Mr. Ashton disputed some of the theories in the notes.  For example, Mr. Marlow states perhaps the IP cut herself and staged the incident in order to get out of a lease or some other benefit, as the defendant claims."  Mr. Ashton's statements to me ranged from there was no incident and the whole thing was made up to the sex was consensual to he wasn't even there.  We finally, at the very last minute, settled on the consensual defense.

e.    Counsel failed to investigate, interview or subpoena Deena Lavender

Procedurally, she did nothing wrong drawing the blood that was later compared to blood found on Ashton and the victim.  Richard Ashton and I agreed not to focus on her and stipulate to her methods because challenging her did not further our goal of convincing the jury that this sexual encounter was consensual.

f.   Counsel failed to investigate, interview or
     subpoena Debbie Zachery

     Before the trial began I had Debbie Zachery's
statement and the prosecutors updated me with e-mails
she sent to them.  I did talk to her before she
testified but she already hated Ashton and was not
going to say anything to help our case.  I did
investigate her criminal history and I did not subpoena
her because I did not want her at the trial.

g.   Counsel failed to investigate, interview or
     subpoena Detective Beasley

     I did speak with Beasley before he testified.  His
testimony was going to hurt our case and I didn't see
any way around that.  He described the crime scene and
the victim's demeanor and had nothing to offer that was
going to support our consent theory.  I did not
investigate or subpoena him.

h.   Counsel failed to conduct an independent
     investigation on alleged evidence and accusations
     by complainant and the State.

     Ashton says in his complaint that he told me
numerous times that "at no time was there intercourse
or sexual organ touching sexual organ."  While we were
preparing for trial, he told me the exact opposite of
this stating that he was naked on his back and the
victim was on top of him.  This statement was part of
the reason we went with a consent defense and it was
consistent with what the victim told police.
     Ashton complains that he "continued asking for the
results from biological and forensic analysis.  Trial
counsel at no time ever had this done."  If Ashton is
claiming I did not mail these results to him while he
was in jail, that is correct, but I had the results.
Confronting him with these results was part of the
reason Ashton finally stopped telling me that he wasn't
there that night and that the victim in the case had
made up this whole story.  It wasn't long before the
trial started that we switched from an alibi defense to

13

a consent defense.

i.   Counsel had Applicant sign a stipulation of
     evidence and then lied to the jury saying that the
     stipulation said there was blood on Applicant's
     penis.

     At no time was Ashton forced to sign a stipulation
although I did think the stipulation was a good idea.
I think part of the reason the State did not move to
enter into evidence the video of Ashton being searched
at the jail was because we signed the stipulation.  I
was very happy about this agreement because I thought
the way Ashton behaved on that video would scare some
jurors.  He was uncooperative, generally unlikeable and
he is seen pulling the broken crack pipe out of his
pocket.  This last item would have been especially
damning because this was the object the state had
alleged as a deadly weapon.
     Mr. Cutrer was real specific in his closing
argument that the stipulation does not say there was
blood on Ashton's penis, the opposite of what Ashton is
claiming.

j.   Counsel went off record and failed to strike
     venire person #27 who couldn't understand the
     proceedings.

     I did not cut venire person #27 because there were
other people we did not want on the jury more than this
person.

k.   Counsel failed to object to the State's oral
     motion to seal the medical records without asking
     about their contents.

     I already knew what was in the medical records
before I had no objection to their being sealed.  I had
an opportunity to inspect them before we were on the
record.  If there had been exonerating or mitigating
evidence in them I would have objected.

l.   Counsel failed to request #4 of discovery motion

14

to be heard.

The Tarrant County District Attorney's office has an open file policy.  In my experience, Molly Westfall does not labor over what is discoverable and what is protected, or what is Brady.  She has always had the policy of showing defense attorneys, and me specifically, everything.  She and Kevin Boneberg gave me constant updates as evidence or statements came to their attention and I was allowed to view and copy any document they had in their possession any time I wanted.  Mr. Ashton is specifically complaining about my not having the motion heard regarding discovering search warrants and affidavits, arrest warrants and affidavits and consent to search forms.  These documents were available to me when I became Ashton's lawyer and I am satisfied I had them all.

m.  Counsel failed to investigate witnesses and failed to object to their testimony in the punishment phase of trial.

I conducted adequate investigation to know who the witnesses in the punishment phase were and what they were going to say.  There was nothing objectionable.  I had to explain to Ashton several times that I couldn't object to them just because their testimony hurts.  I guess if Ashton wanted to contradict ever having said anything sexually explicit or derogatory or wanted to deny making sexual innuendos, that would have been the time for him to take the stand and deny it.

n.  Counsel failed to object to the State's use of false evidence.

During the trial, it was never specified to the jury what was on the penile swab of Richard Ashton except that whatever it was, it had the victim's DNA on it.

(State Habeas R., vol. 4, at 743-46)

Kenneth Cutrer, who assisted Platt, responded to

15

petitioner's allegations in the original state habeas application

as follows:

> I was hired on this case a few weeks before the
> trial specifically to cross examine the complaining
> witness in the case and also to assist Mr. Platt in any
> way that I was asked.  I did not take part in any
> investigation of the witnesses in this case as it was
> not my responsibility.  I did take part in discussions
> regarding trial strategy with both Mr. Platt and
> Richard Ashton.  Mr. Ashton was extremely inconsistent
> in his approach to his defense.  He admitted to having
> had sex with the complaining witness and maintained
> that it was consensual.  On the other hand, he at times
> wanted to contest the DNA evidence in the case that
> confirmed that he'd had sex with the complaining
> witness.  After much discussion it was decided by Mr.
> Ashton that our trial strategy would be that he and the
> complaining witness has [sic] consensual sex.  All
> decisions regarding trial strategy reflect this
> decision by Mr. Ashton.

> With respect to Mr. Ashton's first 8 specific
> grounds A through H alleging ineffective assistance of
> counsel, I did discuss with Mr. Ashton the pros and
> cons of using these witnesses.  In the end the decision
> was made not to use any of these witnesses because none
> of their testimony would be relevant to the issue of
> whether there had been a rape or consensual sex.

> Regarding ground I(9), Mr. Ashton states that I
> told the jury during closing argument that the police
> discovered blood on his penis following his arrest and
> that the stipulation of evidence did not state this.
> The stipulation of evidence states that the complaining
> witness' DNA was on a swab taken from the applicant's
> penis but does not say it was her blood.  The part of
> my closing argument referenced by the applicant is as
> follows:

> > "You look at our stipulation and it says
> > there's blood on his penis.  There wasn't

16

blood on his penis.  There never was.  The
officer didn't say there was blood on his
penis.  She said there's blood all over him.
There wasn't any blood.  There was some on
his fingernails and that's it.  I don't know
where the blood is everywhere and supposedly
they got him right after this two hour
melee."

I don't know if the record is mistaken or whether
I spoke incorrectly in the first sentence.  Either way
when read in context it seems clear that what I was
pointing out was that there was no blood on Mr.
Ashton's penis following an alleged two hour rape where
it had been stated that the complaining witness had
been on her period at the time.  I believe what I
actually said or intended to say was, "You look at our
situation and it **doesn't** say there was blood on his
penis."

Mr. Ashton's 10th ground addresses a decision to
not strike a potential juror that we had challenged for
cause because it appeared he didn't understand English
very well.  The decision to keep this juror was made
because we needed to strike other far more
objectionable jurors.

As for the remaining four grounds K through N (11-
14), I did not take part in any of those decisions.

(State Habeas R., vol. 2, at 427-29)

In a separate affidavit, Cutrer responded to additional

claims raised in petitioner's supplemental state habeas

application as follows:

a.    Counsel failed to present evidence that Detective
      Beasley planted the crack pipe/deadly weapon;

There was no evidence that Det. Beasley planted
the crack pipe on Mr. Ashton.  The notes that Applicant

17

references here were my possible points of cross-examination.  The main reason we did not want to bring up this issue was because we had convinced the prosecutor not to offer the video into evidence of Det. Beasley searching defendant, finding the crack pipe and defendant saying, "I forgot about that."  In our opinion, that would have been very damning.

b.   Counsel failed to object to the falsified crime scene photo presented by the state;

     Mr. Ashton assumes that the crime scene photos were falsified.  Here he confuses weight versus admissibility of evidence.  The state offered a crime scene photo into evidence through the proper witness and laid the proper foundation.  There was no objection to be made.  We could only cross-examine witnesses as to the weight to be given to certain scene photos.

c.   Counsel Hon. Platt, was hired without Applicant's knowledge or permission because Hon. Lisa Mullen had a conflict of interest and wanted Applicant found guilty.

     I have no knowledge of the circumstances under which Mr. Platt was hired on this case.  Mr. Platt retained me with the Applicant's permission about two weeks before the trial.

d.   Counsel, Hon. Platt had a conflict of interest because he works with Hon. Greg Westfall, the husband of Hon. Mollee Westfall, the prosecutor;

     I have no knowledge of any conflict of interest stated in Applicant's ground D.

e.   Counsel failed to interview, investigate or subpoena Natalie Nance;

     I never spoke with Natalie Nance.  It was my understanding that Mr. Platt spoke with her and that she would not make a good defense witness.  I was hired primarily to cross-examine the complaining witness at

trial and to assist Mr. Platt any way I could.   In short, a second chair.

    f.    Counsel failed to present evidence or argument to the jury that the victim's bra was on the couch;

    I have never understood the Applicant's fixation with the location of the complaining witnesses' bra. According to her testimony, the rape began in the entryway/living room, proceeded into the bathroom and ended up in her bedroom over the course of about two hours.   The location of her bra meant nothing with regard to whether the sex was forced or consensual.

    g.    Counsel failed to object to the State's expert witness, Jodi Ericson;

    We did not believe there was any basis to object to this witness testifying.   We did not object to her testifying as an expert because she wasn't offered as an expert.   This witness did the rape exam and documented bruising.   She also testified that there were no genital injuries to the complaining witness which was evidence the Applicant wanted admitted.

    h.    Counsel failed to give Applicant his trial file so Applicant could properly file his application for writ of habeas corpus; and.

    I have no knowledge regarding Applicant's ground H.

    I.    Counsel committed aggravated perjury in their affidavits.

    Counsel stands by the truth of his sworn statements.

(State Habeas R., vol. 4, at 646-48)

    The state habeas court entered detailed findings of fact, too numerous to state here, consistent with counsel's affidavits

19

and the record, made legal conclusions and recommended denial of habeas corpus relief.  (State Habeas R., vol. 4, at 721-53, 788) The Texas Court of Criminal Appeals denied relief based on those findings.  (State Habeas R., vol. 1, at cover)  Petitioner has failed to demonstrate the state courts' adjudication of the claims is contrary to or an unreasonable application of *Strickland*.

This court is bound by the state courts' factual findings, both implicit and explicit.  Weighing the credibility of the affiants was the role of the state habeas court.  *Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005).  The state habeas court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are "virtually unreviewable" by the federal courts.  *Id*.  Clearly, the state habeas court, having considered the affidavits and the likely credibility of the affiants upon the probable reliability of their affidavits, believed counsel's testimony in response to petitioner's allegations.

Further, petitioner's claims are largely conclusory with no legal and/or evidentiary basis, refuted by the record, or involve strategic and tactical decisions made by counsel, all of which generally do not entitle a state petitioner to federal habeas

20

relief. *Busby v. Dretke,* 359 F.3d 708, 715 (5th Cir. 2004)
("Strategic decisions . . . can rarely constitute ineffective
assistance of counsel, so long as they are based on reasonable
investigations of the applicable law and facts."); *Green v.
Johnson,* 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory
allegations in support of a claim of ineffective assistance of
counsel are insufficient to raise a constitutional issue.");
*Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995) (generally,
an "attorney's actions during voir dire are considered to be a
matter of trial strategy"); *Alexander v. McCotter,* 775 F.2d 595,
602 (5th Cir. 1985) (ineffective assistance claims "based upon
uncalled witnesses [are] not favored because the presentation of
witness testimony is essentially strategy and thus within the
trial counsel's domain, and ... speculations as to what these
witnesses would have testified is too uncertain").

Even if petitioner could establish ineffective assistance in
one or more instance, the evidence of his guilt was overwhelming.
Petitioner has failed to demonstrate a reasonable probability
that, but for counsel's acts or omissions, the result of his
trial would have been different or that counsel's errors were so
serious that they rendered the proceedings unfair or the result
unreliable. *Harrington v. Richter*, 131 S.Ct. 770, 787-88 (2011);

21

*Dale v. Quarterman*, 553 F.3d 876, 880 (5th Cir. 2008).

### B. *Prosecutorial Misconduct*

Under ground fifteen, petitioner claims the prosecution conspired to omit favorable testimony from the jury. (Pet. at 7f) Detective Beasley testified that he collected swabs from petitioner' fingernails and his penis immediately after the offense and three days later transported petitioner to the hospital for a buccal swab for DNA comparison. The detective would have testified that petitioner made various incriminating statements, which the detective noted in the police report. (RR, vol. 3, at 133-40) Specifically, the detective noted that petitioner voluntarily stated, "I'm coming down right now," and "I feel bad for what I did to the woman." (*Id.* at 134-35) Defense counsel objected to the second statement, and a hearing was held outside the presence of the jury. During the hearing, the prosecutor stated-

> There's also a portion in there where Mr. Ashton was talking about talking to his attorney, who at the time was Fred Cummings, correct? . . . And either Mollee or I - I think it was me - we actually discussed how not to go into that portion, [correct . . . while you were testifying here in front of the jury?]"

(*Id.* at 139)

Petitioner believes this statement proves the state

"obstructed vital information" that was "staged before trial."
(Pet. at 7f)   Under ground sixteen, petitioner claims the state
"established" false evidence that menstrual blood was on his
penis.   (Pet. at 7f)

The state habeas court entered findings of fact refuting the
claims, made legal conclusions and recommended denial of habeas
corpus relief on petitioner's claims.   (State Habeas R., vol. 4,
at 731-32, 740)   Specifically, the habeas court entered the
following findings of fact on the issues:

99.   Detective Beasley being advised on the stand that
      he was not to go into the fact that Applicant
      spoke about talking to his attorney was proper.

100.  Defense counsel's objection was sustained.

101.  DNA matching the victim's DNA was found on
      Applicant's right hand.

102.  The victim's oral swabs tested positive for semen.

103.  Applicant could not be excluded as the contributor
      of the sperm found in the victim's mouth when
      99.99% of unrelated individuals would be excluded.

104.  The victim could not be excluded as the
      contributor of the DNA profile obtained from
      Applicant's penis when 99.99% of the unrelated
      individuals would be excluded.

105.  Applicant stipulated to the DNA, in part, as
      follows:

      [Carolyn Van Winkle] concluded that [the
      victim's] DNA was found on the penile swab of

Richard James Ashton."

106. The victim testified that Applicant forced her to engage in sexual intercourse with her on top of him.

107. The victim testified that Applicant's penis was inside her female sexual organ "a little bit."

108. The victim testified that his penis contacted her female sexual organ "skin to skin."

109. The victim testified that Applicant's penis had her menstrual blood on it when she was forced to perform oral sex on him.

110. The victim testified that she could taste her menstrual blood on his penis.

111. Hon. Mollee Westfall argued during opening statements that the victim's menstrual blood was on Applicant's penis because he forced her to engage in sexual intercourse.

112. Hon. Westfall argued during closing argument that the victim's "menstrual blood [was] on [Applicant's] penis."

113. Hon. Westfall's arguments regarding blood on Applicant's penis were based on testimony at trial.

114. There is no evidence that the State established false evidence before the jury.

(State Habeas R., vol. 4, at 731-32) (citations to the record omitted)

Replying solely on state law, the court made the following legal conclusions and recommended denial of relief:

92. A defendant's request for counsel may not be used as evidence of guilt. *See Hardie v. State*, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991) ("[A]dverse use of evidence that a defendant invoked a right or privilege which has been granted him, is constitutionally impermissible.")

93. The State properly advised Detective Beasley to not testify regarding Applicant's request for counsel.

. . .

96. Applicant has failed to prove that the State presented false evidence.

97. To be proper, jury argument must fall under one of the following areas (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, and (4) plea for law enforcement.

98. The State's jury arguments regarding the victim's blood on Applicant's penis was a proper summation of the victim's testimony.

99. Applicant has failed to prove that the State committed prosecutorial misconduct.

(*Id.* at 740) (citations omitted except as to 92)

The Texas Court of Criminal Appeals denied relief based on those findings. Petitioner has failed to establish the state courts' adjudication of the claims is contrary to or an unreasonable application of federal law. The state courts' resolution of the first claim comports with Supreme Court precedent on the issue. *See Doyle v. Ohio*, 426 U.S. 610 (9176).

Further, this court must defer to the state courts' determination
of state law that the prosecutor's argument was within the
permissible scope of jury argument.   *Bradshaw v. Richey*, 546 U.S.
74, 76 (2005).

### C.   *Abuse of Discretion*

Petitioner claims the trial court abused its discretion by
neglecting to inquire into a potential conflict based on
counsel's disregard of petitioner's numerous requests to
subpoena, or obtain affidavits from, potential witnesses and
provide him with medical records, "scientific analysis" and
"other valuable information."   (Pet. at ; Pet'r Mem. at 6)

The state habeas court entered the following findings of
fact on the issue:

116. The trial court allowed Applicant to speak about
his problems with counsel.

117. Applicant complained that trial counsel refused to
provide him with copies of documents in his case.

118. Applicant complained that trial counsel refused to
subpoena witnesses.

119. Hon. Platt did not subpoena witnesses he was not
going to call to testify or who indicated that
they were going to arrive on their own.

120. After hearing Applicant's complaints, the trial
court denied Applicant's requests.

121. Hon. Platt admitted that he did not give copies of

26

documents to Applicant.

122. In light of the Tarrant County District Attorney's Office's "open file" policy requirement that defendants not get copies of documents from their files, Hon. Platt's decision to not provide copies to Applicant was the result of reasonable trial strategy.

(State Habeas R., vol. 4, at 732-33) (citations to the record omitted)

Based on its findings, and citing *Cuyler v. Sullivan*, 446

U.S. 335 (1980), the court made the following legal conclusions

and recommended denial of habeas relief:

101. "[T]he proper standard by which to analyze claims of ineffective assistance of counsel due to a conflict of interest is the rule set out in *Cuyler v. Sullivan*, that is, the applicant must show that his trial counsel had an actual conflict of interest, and that the conflict actually colored counsel's actions during trial."

102. Because counsel was not allowed to give Applicant copies of the documents from the State's file pursuant to his agreement with the Tarrant County District Attorney's Office, Applicant has failed to show that this was evidence of a conflict of interest.

103. Because counsel did not subpoena witnesses he was not going to call to testify or witnesses that stated they would show up on their own, Applicant has failed to show that this was evidence of a conflict of interest.

104. Applicant has failed to prove that he demonstrated to the trial court that his counsel suffered under an actual conflict of interest.

27

(*Id.* at 740-41) (citations omitted)

The Texas Court of Criminal Appeals denied relief based on those findings. Under Supreme Court precedent and Fifth Circuit case law, alleged attorney-client conflicts, such as the one alleged in this case, that do not involve multiple representation are more appropriately governed by *Strickland*'s two-part analysis. *Mickens v. Taylor*, 535 U.S. 162, 174-75 (2002); *United States v. Newell*, 315 F.3d 510, 516 (5th Cir. 2002); *United States v. Corona*, 108 F.3d 565, 575 (5th Cir. 1997); *Beets v. Scott*, 65 F.3d 1258, 1259 (5th Cir. 1995) (en back). However, petitioner has not presented any evidence that trial counsel's representation was deficient due to any conflict of interest or that petitioner was prejudiced by any conflict. The Constitution does not require the prosecutor to share all useful information with the defendant. *United States v. Ruiz*, 536 U.S. 622, 629 (2002). As noted by the state court, counsel is not ineffective by refusing to give his client copies of reports contrary to the local open file agreement with the District Attorney's Office. Nor does a defendant's mere dissatisfaction or disagreement with his attorney's strategy give rise to a conflict. *United States v. Fields*, 483 F.3d 313, 353 (5th Cir. 2007); *Moreno v. Estelle*, 717 F.2d 171, 175 (5th Cir. 1983). The Sixth Amendment right to

counsel does not guarantee an accused a "meaningful attorney-client relationship." *Morris v. Slappy*, 461 U.S. 1, 14 (1983). Petitioner's mere assertion of a conflict of interest did not impose upon the trial court a duty to inquire further. *Michens*, 535 U.S. at 168-69. Because petitioner failed to establish a conflict that adversely affected counsel's performance, there was no abuse of discretion on the part of the trial court.

Lastly, petitioner claims the appellate court abused its discretion by basing its opinion on false and manufactured "lies" by the state. (Pet. at 7f-7g; State Habeas R., vol. 4, at 795) He points out that, contrary to the appellate court's "Factual Background," there was no hair or blood taken from him pursuant to a search warrant for DNA testing, there was no DNA testing of the blood on his penis, and there was no DNA evidence placing him in the victim's apartment.

Under Texas law, "[a]n applicant seeking to have a previous decision overturned merely on the basis that it was wrongly decided is not entitled to habeas relief." (State Habeas R., vol. 4, at 741) The state habeas court thus recommended that, because petitioner "only attacks the previous decision of the Seventh Court of Appeals," habeas relief be denied. (*Id.*) The Texas Court of Criminal Appeals denied relief based on this

29

recommendation.   Petitioner has failed to establish the state courts' adjudication of the claims is contrary to or an unreasonable application of federal law.

Petitioner presents no evidence that his conviction is based on false or fabricated information on the part of the state, and his claim is largely belied by the record.   Furthermore, all the facts to which petitioner points, as well as various inconsistencies in the testimony, were available to the jury to consider.   (Pet'r "Table of Contents for (2254) Exhibits," Ex. 12)

### D.  *Evidentiary Hearing*

Petitioner requests an evidentiary hearing, however his claims were adjudicated on the merits in state court, and he has failed to overcome the limitation of § 2254(d)(1) on the record that was before the state court.   *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1398-1401 (2011).   Thus, no evidentiary hearing is warranted.

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate

Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED April ____10____, 2013.

_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE

31